Good morning, may it please the court, I'd like to reserve two minutes for rebuttal. Sure, keep track of your time, we'll try to do the same. I will, thank you. Now this is a case where the Social Security disability claimant was properly diagnosed with fibromyalgia by a specialist, a rheumatologist is the specialist that treats fibromyalgia during the relevant period. I'm going to yell a little louder, imagine you're in front of junior high students. Oh my, I have one of those. Yet the administrative law judge found it not to be a medically determinable impairment. So this isn't a case where the judge found it wasn't severe, the judge found that it was not actually a medically determinable impairment. And this isn't a case where fibromyalgia was just made in passing, where it was listed in the medical history or the claimant thought she might have fibromyalgia. This was a case where there was an evaluation, a referral to a rheumatologist by the primary care provider. The rheumatologist conducted an evaluation, said well I need to make sure that this is right at the first assessment at the intake, ran some tests, and then concluded that this was in fact fibromyalgia. And that diagnosis comports with the Social Security ruling SSR 12-2P for fibromyalgia. And there are a couple ways that diagnosis can be made and recognized as a medically determinable impairment. And one is if you have widespread pain combined with 11 out of 18 tender points. And that is what Dr. Bird, the rheumatologist, said. If for whatever reason the tender points aren't referenced, then the second method of diagnosing fibromyalgia is acceptable, which is widespread pain and a number of co-occurring conditions. And I think this is what's going on in this case, is that initially it is true that fibromyalgia began as a shoulder injury. And that's often the case with fibromyalgia. There'll be a car accident or some other type of injury, and then the pain generalizes and turns into chronic widespread pain. You know, I'm with you. I'm with you in the sense that it appears to me that the ALJ discounted or disregarded the diagnosis of fibromyalgia by mistake. The ALJ says, well, had greater than 11 tender points, but no overt evidence of negative indicator to fibromyalgia, which it's not. And then says, however, she had negative lab workup except for a little. Again, that's not a negative. So I'm with you. I think that the ALJ made a mistake. I think there's a clear diagnosis of fibromyalgia. What do I do with the fact that as part of her therapy, she was on the 30th of May, you know what's coming, walking one to two miles a day? That is to say, that suggests that the severity isn't great. Well, so the harmfulness of the error, Your Honor, is what I believe you're getting to. So one of the reasons that the administrative law judge did reject the functional limitations assessed by Dr. Bird, which was a limitation to sedentary work. And the However, light work is what the judge found she could do, which involves a significant amount of walking, which is six to eight hours a day. If, in fact, she was walking one to two miles a day, and that's not established since she ended up at physical therapy with swollen knees, saying that after walking a lot, she ended up being in a lot of pain with a lot of swelling. So I don't think it's clear that she was walking that much. But even if she were walking that much, then that is still not consistent with the light work that the judge assessed her with. And then that cascades through the sequential evaluation process, because he only identified light jobs at step five. And so it would be assumed that she could stand or walk six to eight hours a day. And you can tell by the types of jobs that were identified that they do require a significant amount of And so the harmfulness of the error, excuse me. Please finish and then I have a question. Oh, sure. Well, the harmfulness of the error is that he fails to meet his burden of production at step five of identifying jobs. There was one other activity that he cited, which was the moving the furniture. Again, she ended up in the emergency room after doing that. So it's certainly not a compelling reason to find that she was regularly lifting heavy weight that would contradict the So if I understand the government correctly, the government's argument and one of them was under the new framework for evaluating medical testimony or medical views, the ALJ could discount Dr. Byrd's conclusions, because it had little objective evidence in the record. So supportability and was inconsistent with activities such as the walking and the moving the hundred pounds of furniture. So the ALJ's conclusion was based on supportability and consistency was correct under the new framework. Could you address that? I don't dispute that the new framework applied. What I dispute is that the findings of the administrative law judge were supported by substantial evidence. And so in terms of the activities, it does not appear that the activities cited by the administrative law judge were actually representative of what Ms. Klingenberg was doing on a regular basis. Even the walking, walking one to two miles a day is usually therapy that's recommended by doctors for people who have physical, who have fibromyalgia, excuse me. And very often administrative law judges reject people's testimony and medical opinions because the individual isn't doing the light level of walking. That's maybe, I don't know, half an hour a day. In terms of the supportability, Dr. Byrd's opinion was very well supported. He was asked to perform a fibromyalgia evaluation. And there are no findings, as I pointed out in my opening brief, there are no findings of laboratory tests or other objective measures found in impairments you might see like orthopedic impairments. And so the factors that he identified were, were very compelling. And he did rule out other conditions that might have caused the limitations. Does that answer your question? So Dr. Byrd had originally diagnosed polyarthralgia and looked into further testing is my understanding. Is that correct? Correct. At the very first intake evaluation, he felt that her symptoms were consistent with fibromyalgia, but felt that before he was able to make that rule out, to take a look at some laboratory testing. She was then seen by another specialist, a physiatrist, who observed more symptoms consistent with fibromyalgia and then a physical therapist, again, more symptoms consistent with fibromyalgia. Then in April of 2019, when Dr. Byrd evaluated her again, he said, now I feel I have enough to diagnose fibromyalgia all the way back to 2016. And if I understand that medical aspect, fibromyalgia is a rule out disease. That is to say, you don't know for certain that somebody has fibromyalgia until you've ruled out other things. You don't diagnose it affirmatively. Is that correct? That's correct. You're under two minutes. Would you like to save the balance of your time? Yes, I would. Thank you. Thank you very much for your argument. We'll hear from the commissioner at this time, Mr. Brackett. Thank you, and good morning. May it please the court. My name is Christopher Brackett. I'm appearing on behalf of the Commissioner of Social Security. I ask that you uphold the ALJ's decision and affirm the district court. First off, this case is about fibromyalgia, but there is one step about determining it's a medically determinable impairment. The regulations state clearly that neither a medical opinion nor a diagnosis will suffice to establish a medically determinable impairment. There must be objective medical evidence. Now, I realize fibromyalgia traditionally eludes traditional objective measure, so we have this ruling, SSR 12-2P, that lays out the roadmap for a claimant to establish this as a medically determinable impairment. It specifies the criteria that are necessary. It looks to see what the – you know, a doctor does diagnose fibromyalgia, but then it looks to see what evidence he provides to support that diagnosis. Now, first of all, there needs to be widespread pain. I know the doctor said in his medical opinion those words, widespread pain, but that carries a specific definition under a Social Security ruling. It requires bilateral pain both above and below the waist, as well as axial spinal pain. Now, we concede that she had axial – the claimant had axial spinal pain. She had low back pain. That meets the ruling's definition for axial spinal pain. And she had bilateral pain below the waist. However, she did not have bilateral pain above the waist. Now, she had this right shoulder injury that was traceable to when she – Nothing that was persistent. Did the ALJ in rejecting a diagnosis of fibromyalgia do anything other than accepting Dr. Ginthy and rejecting Dr. Bird? The ALJ's discussion is on, I believe it's page 19 of the administrative record. He summarizes the evidence surrounding fibromyalgia, in particular Dr. Bird's. It's actually page 18 of the record. Excuse me. He summarizes the evidence pertaining to Dr. Bird's evaluations and then concludes that she does not meet the criteria for fibromyalgia under the Social Security ruling. Now, even though – even if there is less than ideal clarity in a decision, this court won't overturn an agency's decision if its path can reasonably be determined. Now, the ruling lays out the criteria. None of this evidence satisfies the criteria in that ruling. So we can see that the ALJ was drawing a reasonable conclusion. What do you do with the ALJ citing, as it appears to me, reasons for rejecting it that are not reasons? You heard me question your adversary. Yes, Your Honor, I did. And I appreciate Your Honor's position here. This evidence does not show fibromyalgia. It's not inconsistent with fibromyalgia, even though that's apparently what the ALJ seems to think. Right. It can be consistent with fibromyalgia, but when you look at the criteria under SSR 12-2P, it doesn't establish those criteria. Well, of course not. No, but it looks to me as though you're saying it's inconsistent with, and therefore I refuse to accept the diagnosis. And I realize that this decision does not articulate it clearly. That's why I'm asking the Court to look and see the agency's path here. The ALJ does conclude that the criteria are not satisfied, and we can draw reasonable inferences. It appears to me as though he says they're not satisfied by listing criteria that are not inconsistent with fibromyalgia. I think you're giving him reasons that he did not give. I see your point, Your Honor, but the fact is that those criteria are not satisfied under there is not sufficient evidence in the record to satisfy these criteria. Let's assume, for the purpose of this question, that the panel concludes that the ALJ erred in rejecting fibromyalgia. Wouldn't the ALJ then be required to undertake the Rebels v. Berryhill analysis? Your Honor, I don't think the ALJ would be required to, at least in terms of the asserted errors here. You're familiar with the case? I am familiar with Rebels. And what's the purpose of that analysis? In Rebels, fibromyalgia was established as a medically determinable impairment and severe. That's my assumption and my hypothetical. Yes, Your Honor. In that case, when rejecting the medical opinion from the claimant's physician, the ALJ there looked to the lack of support. This court held that, well, you have to consider that this was a treating physician, someone who had seen Rebels I think it was over a dozen times. It's someone who was a rheumatologist who was a specialist in fibromyalgia. The thing about Rebels, it was decided under the prior regulations. Under those regulations, specialization of a medical source was as good as the supportability. The treating relationship was considered the gold standard under the case law developed under the prior regs. The current regulations place a strong emphasis on supportability and consistency. Those are, by the regulations' terms, the two most important factors. All the other factors, the relationship that the medical source might have with the claimant, the specialization, those are considered lesser factors that the ALJ is not required to address except under circumstances not present in this case. Are you arguing that Rebels is no longer good law? For the purposes of the ‑‑ Rebels does not apply to this case. It's still good law for any case where the ‑‑ Well, it doesn't apply because the ALJ said I'm ruling out fibromyalgia, and that's why my question has a hypothetical in it. Assume that the panel concludes that was error. Wouldn't that kind of analysis then be required? Yes. If the ALJ had found it to be a medically determinable severe impairment, when he got to Dr. Bird's opinion, the analysis under Rebels would no longer apply because the regulations that governed evaluating medical opinions that addressed Rebels are no longer applicable. They don't apply to this case. I know we said in Woods v. Ikeakazi that the new regulations superseded our old opinions under Brand X, but is there any part of Rebels that survives the new framework? Yes, Your Honor. I would say that regarding Rebels also addressed evaluating a claimant's subjective statements. I don't think that since the regulations that I'm talking about only discuss medical opinions, they would not deal with the subjective statements. So Rebels would survive in that respect. Rebels would also survive for any claim filed prior to March of 2017. I realize that's a dwindling universe of claims, but it's still applicable there. But in terms of applying to a case filed on or after March 27, 2017, the Rebels' emphasis on treating relationship and on specialization has been superseded by the regulations. The regulations state that the ALJ doesn't have to get to those. The ALJ can discuss them, but really he has to focus on support or consistency. When we look at supportability and consistency, the only thing I saw on the record that seemed inconsistent with Dr. Bird's opinion was the walking one to two miles and moving as much as 100 pounds on one occasion. Those are the only two factors the ALJ identified. Is there anything else that provides substantial evidence for the ALJ's determination on consistency, on supportability and consistency? Beyond what he cited there, there are the other medical opinions that the ALJ found persuasive from the state agency physicians. Again, the ALJ considered those under the supportability and consistency framework. Those opinions support light work. The ALJ found partially persuasive, a consultative examiner's opinion. Again, looking to supportability and consistency. That opinion said that she could do medium work. The ALJ found that the evidence actually supported greater restrictions and assessed an RFC for light work. Those are other factors that are inconsistent with Dr. Bird's very restrictive opinion. Additionally, in looking at Dr. Bird's opinion, he says basically a less than sedentary restriction. None of his findings demonstrate that the claimant is so limited. I realize that fibromyalgia doesn't have objective measure, but to conclude that she has this less than sedentary limitation suggests that there should be some manifestation on examination that would draw him to that conclusion. Ultimately, the ALJ's analysis is supported by substantial evidence. There are other conditions that are causing the claimant's limitations. She has a torn meniscus in her knee. That's actually what led to the physical therapy where she was walking one to two miles at a time for exercise. She had this remote right shoulder injury. She had degenerative disc disease in her lumbar spine. If the court has no further questions. I don't see anything. Thank you very much for your argument. Thank you. If you could lower that just a bit. You raised it to your height. Yes, sir. There you go. Thank you. Rebuttal. Thank you. The argument about the widespread pain being in the quadrants, that just wasn't in the administrative law judge's decision. In this case, we're asking for a remand for further proceedings. We're not asking the court to pay this case. We're asking that you send it back for the judge to make a proper finding, and not for the commissioner or the court to make the finding for him. In terms of REVLs, the new regulations don't undermine REVLs. The fact that the individual was a rheumatologist was a factor. It's still a factor under the new regulations. It's not a primary factor, but it's something that an administrative law judge can consider and must, in fact, consider if there are two opinions that are both fairly even. The regulations state that if the record contains two or more equally consistent and supported opinions, then those additional factors should be considered. And so the fact that a rheumatologist diagnosed the case here was still very relevant. And the fact that it was supported by the American College of Rheumatology's criteria, which is listed right in the opinion, I considered these standards and Ms. Klingenberg meets them, that goes to the supportability. And it's certainly consistent with reports to and from other medical providers indicating pain that had generalized away from the shoulder and into other parts of a body, along with that constellation of symptoms of depression, of insomnia, of anxiety, the whole umbrella that pointed to fibromyalgia in retrospect. Thank you. Thank you for your argument. Thank both sides for their briefing and their argument. The case just argued will be submitted for decision. And we'll proceed to the next case on the argument calendar.
judges: HAWKINS, FLETCHER, IKUTA